UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:13-CV-218-TBR-LLK

EDWIN F. ALBRITTON            PLAINTIFF

v.

CVS CAREMARK CORPORATION, *et al.*            DEFENDANTS

**OPINION AND ORDER**

District Judge Thomas B. Russell referred this matter to Magistrate Judge Lanny King for the resolution of all discovery disputes. (Docket # 24). After attempting to resolve the parties' discovery disputes without a motion, the Court granted Plaintiff leave to move for an order compelling discovery on April 16, 2015. (Docket # 31). Plaintiff moved the Court to compel discovery, Defendants responded, and Plaintiff replied. (Docket ## 34, 35, 36). The Court held oral argument concerning the motion on July 20, 2015. (Docket # 38). The motion is now ripe for the Court's consideration.

Plaintiff, a licensed pharmacist, brought this case and alleged age discrimination related to the termination of his employment. (Docket # 1). Plaintiff served the request to produce and interrogatories subject to his motion on April 22, 2014. (Docket # 34, p. 2). Over the course of approximately 15 months, Defendants provided some documents and answered interrogatories. Plaintiff, not satisfied with the completeness of the discovery, brought the instant motion after the parties attempted to resolve the dispute extra-judicially. (Docket # 34, pp. 3-5).

The Court grants Plaintiff's motion in part and denies the motion in part. Generally speaking, Plaintiff may discover information related to Defendants' employees who either worked in the same store as Plaintiff or both worked in the same operating district and held the same title. Plaintiff may not discover documents related to incorrectly filled prescriptions. The

Court also denies some portions of Plaintiff's motion as moot, the parties having resolved the issues since briefing them and notified the Court during oral argument.

## Requests for Production

The parties briefed their argument as to five aspects related to the discovery of documents: the scope of discovery based on relevant comparators, compensation information related to other employees, customer complaints, incorrect prescriptions (so called mis-fills), and privilege.[1] The Court will address these issues in turn.

The Court notes that once the party seeking discovery demonstrates an appearance of relevance, the party resisting the discovery bears "the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure." *Invesco Inst'l (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007) (citing *Horizon Holdings, LLC v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 211-12 (D. Kan. 2002)). To resist Plaintiff's discovery that appears relevant, Defendants "bear[] a heavy burden of demonstrating that disclosure will work a clearly defined and very serious injury." *Id.* (quoting *Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323, 326 (S.D. Fla. 1985)).

### I. Scope of Discovery—Relevant Comparators

Plaintiff argued that he sought documents related to all pharmacists within the same CVS operating district with the same managers who disciplined and terminated Plaintiff. (Docket # 34, p. 5). Defendants argued that only information related to pharmacists in the same role as Plaintiff, namely Pharmacists in Charge, who Defendants counseled for performance issues

---

[1] The Court notes that Plaintiff also moved it to compel concerning Plaintiff's request number 24, which sought certain documents related to Plaintiff's compensation. (Docket # 34, p. 11). Defendants stated that the documents requested but not produced do not exist. (Docket # 35, pp. 16-17). Plaintiff did not address the issue in his reply brief. The Court considers the matter resolved between the parties and will not address it in this opinion.

involving the same metrics (*i.e.*, internal performance statistics related to the store's overall performance) come within the scope of discovery. (Docket # 35, p. 10). Defendants stated that Plaintiff should only have discovery related to similarly situated employees and argues for applying the Sixth Circuit's *Carey* precedent to limit discovery. *Id.* (citing *Carey v. Foley & Lardner LLP*, 577 Fed. App'x 573, 581-82 (6th Cir. 2014)).

The Court finds Defendants' argument unavailing for several reasons. First, *Carey* did not involve a discovery dispute, but rather an appeal after the district court granted summary judgment. 577 Fed. App'x at 575. Second, *Carey* did not involve a termination, but rather a wage dispute after the plaintiff's retirement. *Id.* Third, the plaintiff in *Carey* testified to the unique nature of his legal practice within the firm, other partners never having done the same work, and therefore effectively argued that no other partner served as a relevant comparator. *Id.* at 580. Finally, the *Carey* court stated that the plaintiff did not establish his prima facie case of age discrimination because "there is no evidence in the record to support an inference that there is another partner who was similarly situated to [the plaintiff] in all relevant respects except age." *Id.* at 582.

In the instant case, Defendants seeks to block Plaintiff's access to documents related to other pharmacists, without which his case will fail for the same reason as Mr. Carey's. The scope of discovery includes nonprivileged matters admissible at trial or reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Discovery is inherently broader than admissible evidence. While the parties may argue at a later time if Plaintiff may admit certain documents to prove his case, to allow Defendants to define the bounds of discovery (as contrasted to admissibility) so narrowly would severely limit Plaintiff's ability to prove his claim. "A plaintiff in an ADEA [Age Discrimination in Employment Act, 29 U.S.C. § 621, *et*

*seq.*] case . . . should not be hamstrung by the district court in limiting his discovery." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995).

Defendants further argued their point by citing to the Sixth Circuit's opinion in *Laws* for the proposition that comparator employees must have had the same supervisor, same standards for their position, and same conduct, without differentiating or mitigating factors. (Docket # 35, p. 10). The court in *Laws*, reviewing a grant of summary judgment, stated that those factors cited by Defendants are generally "'all relevant considerations in cases alleging differential disciplinary action,'" but also acknowledged that they "may not be relevant 'in cases arising under different circumstances.'" *Laws v. HealthSouth N. Ky. Rehab. Hosp. Ltd. P'ship*, 508 Fed. App'x 404, 411 (6th Cir. 2012). Defendants believe that many of the individuals for whom Plaintiff seeks personal documents will not serve as relevant comparators. But the Court will not restrict discovery to Defendants' theory of the case. Defendants may argue for the exclusion of certain employees at trial or on a dispositive motion, but Plaintiff must have access to documents before that stage so he can present argument based on his theory of the case. Rule 26 states that "[r]elevant information need not be admissible at the trial." Fed. R. Civ. P. 26(b)(1). Arguing that Plaintiff cannot admit the evidence sought does not meet Defendants' burden to avoid discovery.

Plaintiff must "shoulder the burden of proving" the illegality of Defendants' employment practices and therefore "should not normally be denied the information necessary to establish that claim." *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991) (speaking in a Title VII, gender-discrimination context). Nonetheless, Rule 26 requires the Court to "limit the frequency or extent of discovery otherwise allowed," if the Court determines the burden or expense is disproportionate to the benefit of the discovery. Fed. R. Civ. P. 26(b)(2)(C). While the

4

Court should allow Plaintiff broad discovery, it possesses "wide discretion in balancing the needs and rights of" all parties. 925 F.2d at 906.

Based on the arguments of counsel, both in briefing and at oral argument, the Court finds documents related to other Pharmacists in Charge within the same operating district provide relevant evidence, for discovery purposes, because they performed the same basic functions in Defendants' operations and reported to the same managers in reasonably close geographical proximity. The Court also finds that the performance of all pharmacists in Plaintiff's store, number 6376, contributed to the metrics scores Defendants used to evaluate, and eventually decide to terminate, Plaintiff. As such, information about these employees provides relevant evidence. The Court finds the benefit of discovering this information outweighs the burden and expense.

The Court finds, based on the arguments before it, that Defendants did not evaluate the pharmacists at other stores, other than the Pharmacists in Charge, in a similar manner to Plaintiff. Moreover the performance of these pharmacists did not contribute to the metrics scores used to evaluate Plaintiff because they worked at different stores. Therefore, the benefit of discovering this information does not currently justify the burden and expense of production. The Court finds the link between this information and Defendants' decision to terminate Plaintiff tenuous. This remains true for both parties' theories of the case.[2]

---

[2] Defendants stated they terminated Plaintiff for poor metrics scores that drew on the performance of other pharmacists at store 6376. Plaintiff stated that Defendants' terminated him because of his age and used other reasons as pretext. Those other factors (Plaintiff's performance reviews, missed audit deadlines at store 6376, missed training deadlines at store 6376, non-compliance with licensing at store 6376, and customer complaints for store 6376) do not implicate the employees at other stores.

Therefore, the Court limits Plaintiff's discovery to Pharmacists in Charge who worked in CVS's District 7 of Region 35 and all other pharmacists who worked at store number 6376. As to other employees of Defendants, the Court denies Plaintiff's motion, without prejudice.

II. Compensation of Other Employees

Plaintiff sought salary, compensation, and benefits information related to employees other than Plaintiff and argued that he pled sufficient allegations to bring the documents within the scope of discovery. (Docket # 34, p. 8). Defendants argued that the documents exceed the scope of discovery because Plaintiff did not plead a wage-discrimination claim under ADEA. (Docket # 35, p. 14).

Discovery does not have its limit at the claims and defenses pled; Rule 26(b)(1) allows the federal courts to permit discovery, for good cause, "of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1); *accord In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188 (10th Cir. 2009); *Hill v. Motel 6*, 205 F.R.D. 490, 492 (S.D. Ohio 2001). When a party objects to the relevancy of discovery, the court must determine if the discovery is relevant to the claims or defenses. If the court determines that the discovery sought lacks relevance to the claims or defenses but has relevance to the subject matter of the action, then the court looks further to determine if good cause exists to allow the discovery. Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment; 568 F.3d at 1188.

The Court assumes, without deciding and for the purposes of this motion only, that the discovery sought lacks relevance to the claims and defenses of Plaintiff's Complaint. Plaintiff generally alleged that Defendants treated him in a disparate manner compared to younger pharmacists in the same store. (Docket # 34, p. 8). Plaintiff argued that Defendants generally engaged in a course of conduct that treated him disparately from non-protected employees

6

working as pharmacists at the same location and that Defendants lied to Plaintiff about compensation-related decision for that location. Therefore the Court finds salary, compensation, and benefits information related to the pharmacists working at the same store as Plaintiff relevant to the subject matter of the litigation and that good cause exists to allow the discovery thereof.

As Plaintiff held the position of Pharmacist in Charge and alleged disparate treatment between himself and younger employees, including in compensation, the compensation of Pharmacists in Charge lies within the subject matter of the case. *Id.* The Court also finds subject-matter relevance and good cause for the other Pharmacists in Charge in the same CVS district, who will serve as potential comparators for Plaintiff's case.

However, based on the Plaintiff's limited allegations, which do not include allegations of a district-wide scheme to treat Plaintiff differently than all other pharmacists when making raise determinations, the Court will limit discovery. The Court finds information related to pharmacists other than those in store 6376 or titled Pharmacists in Charge disproportional to the needs of Plaintiff's case. Plaintiff did not sufficiently allege a link between Defendants' compensation decisions for these pharmacists and for him. Therefore, the Court limits Plaintiff's discovery to Pharmacists in Charge who worked in CVS's District 7 of Region 35 and all other pharmacists who worked at store number 6376. As to other employees of Defendants, the Court denies Plaintiff's motion, without prejudice.

### III. Customer Complaints

Plaintiff sought the documents related to each customer complaint and its resolution for each store within the CVS operating district in which he worked. (Docket # 34, pp. 8-9). He argued that Defendants disciplined him for both the quantity of and increase in the number of complaints. *Id.* Defendants argued in response that they had produced customer complaints for

the store where Plaintiff worked for 2011 and 2012, but that the remainder of the complaints lacked relevance. (Docket # 35, p. 15). Defendants base this contention on the argument that they did not terminate Plaintiff specifically based on customer complaints but rather low metrics scores. *Id.* Nonetheless, Plaintiff argued that Defendants used the customer complaints as part of a pretext to terminate him. (Docket # 34, p. 9). Defendants terminated Plaintiff "for poor job performance over an extended period of time." (Docket # 34-3, p. 2). Plaintiff provided a Coaching and Counseling Form used by Defendants, and dated less than five months before Plaintiff's termination, that cites an "[i]ncreased number of customer complaints" as a problem and a need to "decrease future customer complaints" as an expectation of Defendants for Plaintiff. (Docket # 36-6). The Court finds that Plaintiff established the relevance of customer complaint forms for the purposes of discovery. Plaintiff made the request to discover those forms based on a reasonable calculation that they would lead to the discovery of admissible evidence, especially related to the stated reasons for Plaintiff's termination and a comparison of his performance relative to other employees of Defendants.

  Defendants further argued that they produced all metrics reports for the stores in question and those reports "reflect the level of customer satisfaction . . . and make production of the actual complaints themselves unnecessary." *Id.* at p. 16. The Court finds that argument unavailing. Defendants must respond to the request for production presented, not offer substitute documents. Plaintiff seeks the complaints and not only the metrics that summarize them. Defendants have not met their burden of demonstrating why Plaintiff should not have the complaints and therefore must produce them.

  Plaintiff alleged that Defendants used customer complaints from store 6376 as a pretext to terminate Plaintiff. The Court finds examination of those complaints proportional for the

needs of the case. The Court finds documents related to retention and termination of other Pharmacists in Charge discoverable. These documents include the complaints lodged against these individuals, which have relevance and a net benefit to Plaintiff. Based on the arguments before it, the Court finds complaints lodged against other pharmacists too attenuated. Therefore, the Court limits Plaintiff's discovery to Pharmacists in Charge who worked in CVS's District 7 of Region 35 and all other pharmacists who worked at store number 6376. As to other employees of Defendants, the Court denies Plaintiff's motion, without prejudice.

### IV. Incorrectly Filled Prescriptions

Plaintiff sought all documents related to incorrectly filled prescriptions, so-called mis-fills, since 2008. (Docket # 34, p. 10). Plaintiff admitted that Defendants did not cite mis-fills as a reason they terminated Plaintiff. *Id.* Plaintiff sought the information so that at trial he can support the argument that younger pharmacists made more egregious errors and Defendants did not terminate them. *Id.* Defendants argued in response that this request sought information that would only enable Plaintiff to "compare apples to oranges." (Docket # 35, p. 16).

The Court agrees with Defendants that the request for mis-fill documents exceeds the scope of discovery. Plaintiff alleged that Defendants terminated his employment because of his age and under various pretexts, none of which is an incorrectly filled prescription. To allow Plaintiff to seek mis-fill documents would lead to a slippery slope in this case's discovery. Based on the record before it, the Court does not believe that any connection exists between Defendants' decision to terminate Plaintiff, lawfully or not, and decisions regarding the retention of younger employees incorrectly filling prescriptions. To conclude that such a connection exists would require the Court to presume the existence of a significant scheme to terminate protected employees at all costs, including significant liability for dangerous practices. Other courts have

approached such grand-scheme theories for discovery with great skepticism. *E.g.*, *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1085 (11th Cir. 1990) ("A vague possibility that loose and sweeping discovery might turn up something suggesting . . . [discrimination] does not show particularized need and likely relevance that would require moving discovery beyond that natural focus of the inquiry."); *Kresefky v. Panasonic Commc'ns & Sys. Co.*, 169 F.R.D. 54, 65 n.11 (D.N.J. 1996) ("[P]laintiffs' theory that defendants engaged in a grand scheme to operate their business in such a way as to disguise discriminatory motives . . . is, on the present record, entirely speculative and cannot justify such sweeping discovery requests.").

Therefore, the Court denies Plaintiff's motion to compel as to request number 40.

V. Privilege

Defendants asserted attorney-client privilege over a number of documents. (Docket # 35, p. 35). The burden of establishing that a privilege exists to shield a document from discovery rests on the party asserting the privilege. *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983); *Collins v. Braden*, 384 S.W.3d 154, 161 (Ky. 2012). Defendants relied on previous letters between counsel annexed to their motion to state their arguments vis-à-vis privilege. (Docket # 35, p. 16).

In Defendants' counsel's letter, he states that Defendants erroneously asserted patient-safety–work-product privilege, but that the two documents concerned remained protected by attorney-client and attorney–work-product privileges. (Docket # 35-6). Defendants' counsel's correspondence states that in-house and outside counsel "were involved in these communications." *Id.* Defendants did not offer any further argument on the matter.

Even assuming that statement's truth does not establish that a privilege protects any document. Application of federal common-law privilege requires, among other elements, that the

10

communications had a confidential character, were made in confidence, and were related to the purpose of professional legal advice. *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998). Moreover, the party asserting the protection must demonstrate that it has not waived the privilege. *Id.*

Defendants chose to make their arguments regarding privilege by incorporating correspondence between counsel. Those letters did not address more than the fact that in-house and outside counsel "were involved in the communications." Therefore, Defendants have not met their burden to demonstrate that an evidentiary privilege shields the documents sought from discovery. Defendants must produce the documents sought by Plaintiff.

## Interrogatories

Plaintiff moved the Court to compel more complete answers as to six interrogatories, numbers 9, 10, 12, 13, 15, and 19. The parties' counsel informed the Court during the July 20, 2015, oral argument that they resolved the disputes related to numbers 9, 10, and 12. As such, the Court denies, as moot, Plaintiff's motion as to those interrogatories.

Defendants raised specific arguments related to each of the remaining interrogatories in dispute but also argued that Plaintiff exceeded the limit of 25 interrogatories established by rule. The Court will first address the interrogatory-limit argument.

Defendants argued that while numbered 24, Plaintiff's interrogatories actually "total[ed] more than 75" when one includes subparts. (Docket # 35, p. 17). However, Defendants did not raise this objection in their initial response to the interrogatories. (Docket # 34-6). When a responding party fails to timely raise an objection, the respondent waives that objection absent a showing of good cause for the court to excuse the failure. Fed. R. Civ. P. 33 (b)(4); *Drutis v. Rand McNally & Co.*, 236 F.R.D. 325, 337 (W.D. Ky. 2006). Defendants have not argued any

good cause to excuse their failure to timely raise the objection to the number of interrogatories. Therefore, by failing to object that Plaintiff exceeded the 25-interrogatory limit, Defendants waived that objection. At this time, the Court need not determine if further interrogatories may be made by Plaintiff without moving the Court. The Court limits its ruling to the fact that Defendants waived their objection as to the interrogatories at issue in the instant motion.

I. Interrogatory Number 13

In interrogatory 13, Plaintiff requested the job duties and qualifications of all of Defendants' pharmacists and Pharmacists in Charge in the district where Plaintiff worked[3] as well as identifying and compensation information for the individuals. (Docket # 34-6, p. 12). Defendants objected to the interrogatory on the grounds of vagueness, ambiguousness, burdensomeness, scope, and private and confidential information. *Id.* Defendants then directed Plaintiff to "see Job Descriptions for Staff Pharmacist and Pharmacist-in-Charge and the District Roster," while asserting that it answered "[s]ubject to said objections, and without waiving same." *Id.* The Court notes that the boilerplate objections raised to this and the other interrogatories do not meet the Defendants obligation to raise objections with specificity and do not meet their burden to sustain the objections unless supported by sufficient, specific argument in their briefs. *See Janko Enters., Inc. v. Long John Silver's, Inc.*, No. 3:12-CV-345-S, 2013 WL 5308802, at *7 (W.D. Ky. Aug. 19, 2013).

Plaintiff argued that Defendants did not provide the compensation information sought and moved the Court for an order compelling a more complete answer. (Docket # 34, p. 14). Defendants relied on their arguments as to the requests to produce regarding other employees,

---

[3] Plaintiff acknowledged that he substituted "Area 7, Region 35" for "District 7, Region 35," the proper CVS division where he worked. (Docket # 36, p. 11). The Court will treat this and interrogatory 15 as if Plaintiff had requested information for District 7, and consider the prior formulation a scrivener's error of which Defendants have notice after Plaintiff's reply brief and the oral argument.

12

namely that Plaintiff has not pled a wage claim. (Docket # 35, p. 21). Defendants further made bald arguments that the information sought lacks relevance. *Id.* Defendants state that information regarding qualifications lacks relevance because the instant matter "is not a demotion, denial[-]of[-]promotion, or reduction[-]in[-]force case." *Id.* at pp. 21-22. Defendants also argue that the gender of pharmacists "is completely irrelevant to this case." *Id.* at p. 22. Defendants do not cite any law in support of these arguments.

The Court already determined that good cause exists to discover compensation information, which is relevant to the subject matter of the litigation, if not the claims and defenses. As to the qualifications objection, the *Casey* case, upon which Defendants relied for a separate point, held that "'the skill, effort, and responsibilities of each job and the working conditions'" serve as relevant factors for determining if employees are similarly situated for ADEA-comparator purposes. *Casey*, 577 Fed. App'x at 582 (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 522 (6th Cir. 2008)). The Court believes that qualifications prove relevant, discoverable information related to the skills, effort, and responsibilities of Defendants' employees. Finally as to the gender objection, the Court finds that Defendants did not meet its burden of demonstrating the "disclosure will work a clearly defined and very serious injury." *Invesco Inst'l (N.A.), Inc.*, 244 F.R.D. at 380. Gender information could aid Plaintiff in proving his claims, for example in controlling for gender in any statistical analysis of the compensation data.

As stated above, the Court finds, based on the argument before it, the link between Plaintiff and pharmacists at other stores, unless they also worked as Pharmacists in Charge, too attenuated to allow discovery at this point. That is, the burden and expense of the discovery exceed its benefit. Therefore, the Court limits Plaintiff's discovery to Pharmacists in Charge who

worked in CVS's District 7 of Region 35 and all other pharmacists who worked at store number 6376. As to other employees of Defendants, the Court denies Plaintiff's motion, without prejudice.

### II. Interrogatory Number 15

In interrogatory 15, Plaintiff requested human resources information for each pharmacist either terminated or not given a raise in "Area 7, Region 35," from June 1, 2006, to the present. (Docket # 34-6, p. 13). Defendants objected to the interrogatory on the grounds of vagueness, ambiguousness, burdensomeness, scope, and private and confidential information. *Id.* Defendants then directed Plaintiff to "see District Roster" while asserting that it answered "[s]ubject to said objections, and without waiving same." *Id.*

Plaintiff argued that Defendants provided some, but not all of the information sought, and moved the Court for an order compelling a more complete answer. (Docket # 34, p. 15). Specifically, Plaintiff sought the following about the individuals listed by Defendants in the District Roster provided: gender; educational background; compensation at termination; reasons for adverse actions (the dates of which Defendants did supply); the name and title of the individual authorizing or approving the termination; the number of, basis of, and responsible person for any warnings or similar actions short of termination; and, the name, age, and gender of any terminated individual's replacement. *Id.* pp. 14-15.

Defendants argued that they agreed to provide additional information. (Docket # 35, p. 22). During oral argument, Plaintiff acknowledged the receipt of additional discovery information. However, both parties' counsel agreed Defendants provided that information only one business day prior to the oral argument. In their response brief, Defendants agreed to provide information as to which employees have left Defendants' employ and the reasons for the

employees' terminations. *Id.* Therefore the Court orders Defendants to provide this information, if not already provided.

Defendants further argued that Plaintiff cannot discover information regarding pharmacists not provided a raise, that the geographical scope of the request was too broad, and that various information lacks relevance or can be ascertained from documents. *Id.* The Court already addressed the discovery of compensation (relative to the requests to produce and interrogatory number 13) and will apply the same standard to this interrogatory. Based on the parties' briefing and oral argument, the Court finds the geographical issue resolved, as Plaintiff conceded they sought only the information for the 19 to 21 stores in the CVS District where Plaintiff worked.[4] Finally, as to relevance, Defendants did not make specific arguments other than to say that gender provided an example of irrelevant information. The Court already addressed the discovery of employee gender as to interrogatory number 13 and will apply the same standard to this interrogatory. For any other potential relevance objections, Defendants failed to make specific arguments and thereby failed to meet their burden in resisting discovery.

Finally, Rule 33(d) does allow a party to respond to an interrogatory by producing business documents. Fed. R. Civ. P. 33(d). If Defendants intended to rely on this provision of the interrogatories rule, then they must meet its requirements when they craft a more complete answer to interrogatory number 15. First, the rule requires that "the burden of deriving or ascertaining the answer will be substantially the same for either party." *Id.* Then, Defendants must specify the records Plaintiff will need to review to answer the interrogatory for himself, providing information so Plaintiff can "locate and identify them as readily as" Defendants could.

---

[4] Defendants' counsel stated during oral argument that the number of stores in Plaintiff's geographical unit varied over the time Plaintiff seeks discovery. As to the geographical limitation, Plaintiff admits it erred in the terminology regarding Defendants' stores, but seeks information only for these stores. (Docket # 35, p. 22); *see also* note 3, *supra*.

*Id.* Finally, Defendants must make the documents available for Plaintiff to examine, audit, and make copies or derivative documents. *Id.* Simply stating that the answer could be determined from documents does not satisfy the rule.

As stated above, the Court finds, based on the argument before it, the link between Plaintiff and pharmacists at other stores, unless they also worked as Pharmacists in Charge, too attenuated to allow discovery at this point. That is, the burden and expense of the discovery exceed its benefit. Therefore, the Court limits Plaintiff's discovery to Pharmacists in Charge who worked in CVS's District 7 of Region 35 and all other pharmacists who worked at store number 6376. As to other employees of Defendants, the Court denies Plaintiff's motion, without prejudice.

### III. Interrogatory Number 19

In interrogatory 19, Plaintiff requested a description of "all statistics kept by Defendant[s] for hires, promotions, and termination by age . . . indicating the location where such statistical information is kept." (Docket # 34-6, p. 15). Defendants objected to the interrogatory on the grounds of vagueness, ambiguousness, burdensomeness, scope, and private and confidential information. *Id.* Defendants then directed Plaintiff to "see District Roster" while asserting that it answered "[s]ubject to said objections, and without waiving same." *Id.*

Plaintiff argued that Defendants have not provided statistical information on the basis that Plaintiff has not identified a statistical expert or indicated he will rely on statistical analysis. (Docket # 34, p. 15). Plaintiff argued that Defendants' position does not present a valid objection and it need not identify an expert to discover the information. *Id.* Defendants respond that Plaintiff "has not advanced a theory of discrimination as evidenced by statistical analysis" and "has not designated an expert" with the expert deadline past. (Docket # 35, p. 23).

16

The Court overrules Defendants' objections. Much of the briefing for the instant motion relied on theories of discrimination based on potential statistical analysis. For example, Defendants argued that Plaintiff could not discover information related to certain employees because they did not prove similarly situated comparators. (*E.g.*, Docket # 35, pp. 10-14). Defendants cited no authority to support their contention that statistical evidence will not aid the finder of fact in deciding the instant matter. The Court finds that Defendants failed to meet their burden of demonstrating that the statistical evidence lacks relevance to Plaintiff's claims and defenses.

The Court finds that one need not designate a statistical expert to discover statistical information. While Plaintiff may need expert testimony to aid the trier of fact in understanding some evidence via an opinion regarding statistics, the statistics themselves do not require an expert, per se, to enter into evidence. *See* Fed. R. Evid. 702. Lay witnesses can testify as to facts without drawing opinions based on those facts and can sometimes testify as to opinions. Fed. R. Evid. 701. While some statistical analysis may require "scientific, technical, or other specialized knowledge" to draw an opinion, other statistics fall within the realm of lay witness understanding. For example, while most lay jurors will not understand regression analysis, they will almost certainly understand a mean (*i.e.*, arithmetic average). Moreover, requiring a Plaintiff to name an expert before he can have the evidence upon which the expert will draw conclusions creates a chicken-or-egg problem not supported by the Federal Rules. *See* Fed. R. Civ. P. 26(a)(2)(B) (stating the default rule that a party must deliver his or her expert's report contemporaneously with disclosing the expert's identity); *see also* Fed. R. Civ. P. 26(d)(2)(A) ("[M]ethods of discovery may be used in any sequence.").

Plaintiff may move the Court to amend its Scheduling Order once it has the information needed to evaluate the need and benefit of an expert. The courts should strive to resolve cases on their merits, not procedure. *See* Fed. R. Civ. P. 1; *McCurdy v. Am. Bd. of Plastic Surgery*, 157 F. 3d 191, 197 (3d Cir. 1998) (acknowledging the tension between resolving matters on the merits with the need to adjudicate matters in a timely matter). To deny discovery would foreclose any argument to allow an expert witness. Plaintiff requested the statistical information approximately seven months before the expert witness deadline. Moreover, Defendants did not raise the expert-deadline object until the parties briefed the instant motion, only after months of attempting to resolve the disputes extra-judicially. Defendants' actions created, at least in part, the delay it now seeks to profit from. If the Court rewarded delay tactics in discovery it would create a precedent for perverse incentives.

## ORDER

IT IS HEREBY ORDERED that Plaintiff's Motion to Compel is granted in part and denied in part. (Docket # 34). The Court denies the motion, without prejudice, as to information related to employees at stores other than number 6376 who were not titled Pharmacists in Charge and all employees outside Defendants' District 7 of Region 35. The Court also denies the motion as to request to produce number 40, which seeks documents concerning incorrectly filled prescriptions. The Court further denies, as moot, the motion as it relates to requests for production concerning Plaintiff's compensation and interrogatories 9, 10, and 12. Otherwise, the Court grants Plaintiff's motion. Consistent with this opinion and order, Defendants must supplement their production and provide more complete answers to Plaintiff's interrogatories 13, 15, and 19, within 30 days.

c: Counsel
p: 0.57